**E-FILED**
Wednesday, 22 December, 2004  04:50:43 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| GREG BURRUS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 03-3225 |
| | ) | |
| GREAT WESTERN PRODUCTS CO. | ) | |
| | ) | |
| Defendant. | ) | |

**GREAT WESTERN PRODUCTS COMPANY, INC.'S**
**REPLY IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

### I.    INTRODUCTION

Great Western Products Company, Inc. ("Great Western" or "Company"), by counsel, files this Reply in Support of its Motion for Summary Judgment.  In his Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Memorandum"), Burrus admits that he is asking the Court to create a cause of action that Illinois courts, and federal courts applying Illinois law, have universally refused to recognize -- a claim for retaliatory constructive discharge.  In light of the courts' unequivocal refusal to permit such a claim, Great Western respectfully requests that the Court decline Burrus' invitation to create a new state-law cause of action.

Nevertheless, even if the Court permits Burrus to proceed on his retaliatory constructive discharge theory, Burrus cannot point to any facts that demonstrate that he was constructively discharged or retaliated against.  There is no genuine issue of material fact, Burrus' Complaint fails as a matter of law, and Great Western's Motion for Summary Judgment should be granted.

1

## II.    Reply To Plaintiff's Additional Material Facts

### A.    Undisputed Facts

The following facts are undisputed for purposes of the present motion:  1, 2, 3, 4, 6, 8, 9, 11, 13, 14, 15, 17, 19, 24, 27, 28, 31, 32, 37, 38, 39, 40, 41, 42, 43, 47, 48, 49, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 63.

### B.    Disputed Facts

The following facts are disputed because the statement is taken out of context, does not accurately reflect Burrus' deposition testimony, or does not accurately cite all of the relevant deposition testimony:

5.    The testimony reflects that the worms were visible on the shrink wrap.  There is no testimony that the worms were inside the shrink wrap cover.  (Burrus Dep. 44, 45)

7.    The purported factual statement is not supported by the cited deposition testimony.  Burrus testified that he did not know whether Phil Uphoff ignored the transfer sheet's instruction to fumigate the corn.  (Burrus Dep. 49-50)

10.    This is Burrus' counsel's characterization of the testimony.  There is no foundation for Plaintiff's characterization of Mr. Uphoff's state of mind.  The transcript speaks for itself. (Burrus Dep. 47-50)

12.    There is no foundation for this purported fact; it is merely Plaintiff's speculation. At Burrus' deposition, Great Western objected to the improper form of the questions that elicited this purported fact.  (Burrus Dep. 187)

16.    The cited portions of the transcript do not reflect that the purported weevil "infestation" could have been a result "of the manner in which [Great Western] was processing corn."  (Burrus Dep. 60, 61)

18.    This is Burrus' counsel's characterization of the testimony.  The transcript speaks for itself.  Reg Bryant agreed with Burrus that infested corn needed to be fumigated.  After Bob Roese became Burrus' boss, Reg Bryant informed  Burrus that he [Burrus] would have to work through Bob Roese.  (Burrus Dep. 62, 63, 69, 70)

20.    This is Burrus' counsel's characterization of the testimony.  The transcript speaks for itself.  (Burrus Dep. 70, 71)

21.    This is Burrus' counsel's characterization of the testimony.  The transcript speaks for itself.  Burrus testified that Reg Bryant told him that, when Burrus called Scott Martin, he [Reg Bryant] should have come down and fired Burrus because Burrus went around the chain of command.  (Burrus Dep. 135, 136)

22.    The cited portion of the transcript does not reflect that the jalapeño peppers purchased from Louisiana Foods were actually shipped to Dachau, Germany.    (Burrus Dep. 188)

23.    The cited portion of the transcript does not reflect that it " would" take months for peppers to travel from Great Western's Assumption, Illinois facility to Dachau, Germany.  (Burrus Dep. 188)

25.    This is Burrus' counsel's characterization of the testimony.  The transcript speaks for itself.  (Burrus Dep. 74, 188)

26.    This is Burrus' counsel's characterization of the testimony.  The transcript speaks for itself.  (Burrus Dep. 72, 76, 78)

29.    This is Burrus' counsel's characterization of the testimony.  The transcript speaks for itself.  (Burrus Dep. 75)

30.    This is Burrus' counsel's characterization of the testimony.  The transcript speaks for itself.  (Burrus Dep. 72, 188)

33.    This is Burrus' counsel's characterization of the testimony.  The transcript speaks for itself. (Burrus Dep. 79, 80)

34.    The cited portion of the transcript does not reflect this fact.  (Burrus Dep. 80)

35.    The cited portion of the transcript does not reflect this fact.  (Burrus Dep. 80)

36.    The cited portion of the transcript does not support this purported fact.  When Rocky Franklin told Burrus he would get him new labels, Burrus responded "well, whatever." (Burrus Dep. 82)  This became a non-issue because Franklin never provided Burrus with new labels.  (Burrus Dep. 82)  Burrus never said anything to Franklin to suggest it was inappropriate to re-label cheese.  (Burrus Dep. 190-91)

44.    This is Burrus' counsel's characterization of the testimony.  The transcript speaks for itself. (Burrus Dep. 189-190, 196-197)

45.    This is Burrus' counsel's characterization of the testimony.  The transcript speaks for itself. (Burrus Dep. 189, 190)

46.    The cited portions of the transcript do not reflect this fact.  (Burrus Dep. 192, 193)

50.    At Burrus' deposition, Great Western objected to the nature of the questions that elicited this response.  Also, this is Burrus' counsel's characterization of the testimony.  The transcript speaks for itself.  (Burrus Dep. 198, 199)

51.    This is Burrus' counsel's characterization of the testimony.  The transcript speaks for itself.  (Burrus Dep. 198, 199).  Burrus testified that he took Roese's statement to mean that Roese might "put [Burrus] in a different position maybe, or eliminate [Burrus] or give somebody else [Burrus'] position."  (Burrus Dep. 198-99)

62.     The cited portion of the transcript does not support this purported fact.  A single employee purportedly told Burrus that she thought Bob Miller was trying to take Burrus' job. (Burrus Dep. 158-59)   In any event, the alleged statements by this purported subordinate employee are inadmissible hearsay.

64.     At Burrus' deposition, Great Western objected to the improper form of the question that elicited this response.  (Burrus Dep. 199, 200)  Also, this purported fact contradicts other portions of Burrus' deposition testimony wherein he testified that he does not have any information as to what his supervisor's motivations would be to have him separated from the Company.  (Burrus Dep. 167, 168, 169, 213, 214)

65.     At Burrus' deposition, Great Western objected to the improper form of the question that elicited this response.   Also, this is Burrus' counsel's characterization of the testimony.  The transcript speaks for itself.  (Burrus Dep. 200)  Burrus testified that no one from Great Western ever accused Burrus of being the employee who complained to OSHA. (Burrus Dep. 97-98)

## III.     ARGUMENT

### A.     Burrus Fails To State A Claim Upon Which Relief Can Be Granted For Retaliatory Constructive Discharge

Burrus does not dispute in his Memorandum that his sole cause of action in this matter is for retaliatory constructive discharge.  (Complaint, ¶¶ 27, 28, 29) However, Burrus cannot cite to a single decision, from any court, holding that Illinois recognizes such a claim.  Rather, Burrus states that "[w]hile the Illinois Supreme Court has criticized the expansion of the tort to include constructive discharge, it has not squarely addressed the issue."   (Memorandum, pg. 17) Burrus' Memorandum conveniently ignores the abundance of Illinois state and federal court decisions that conclusively hold that no such cause of action exists.  Burrus' invitation to the

Court to create the tort of retaliatory constructive discharge is against the manifest weight of legal authority and must be denied.

As an initial matter, Great Western submits that the Illinois Supreme Court has, in fact, addressed the impermissibility of retaliatory constructive discharge claims. Specifically, in Hartlein v. Illinois Power Co., 601 N.E.2d 720 (Ill. 1992), the plaintiff filed a retaliatory discharge claim against his employer because his employer directed him to engage in a job search. However, the plaintiff was not discharged and was never threatened with a loss of employment. The court ultimately held that "[w]e further decline to expand the tort of retaliatory discharge, on these facts, to encompass the concept of constructive discharge." Id. at 730.

The Illinois Supreme Court's unwillingness to recognize the retaliatory constructive discharge cause of action in Hartlein is consistent with the universal refusal of Illinois appellate courts, and federal courts applying Illinois law, to recognize such a claim. "Illinois courts have repeatedly expressed their reluctance to expand the tort [of retaliatory discharge] beyond its original confines, particularly with respect to the first element of discharge." Propst v. Bitzer, 39 F.3d 148, 154 (7th Cir. 1994). As noted by the Seventh Circuit, "Illinois courts have therefore consistently refused to recognize constructive discharge as the basis for retaliatory discharge claims." Id. Thus, under Illinois law, "'constructive discharge is not an actionable concept' in regard to retaliatory discharge." Grey v. First National Bank of Chicago, 523 N.E.2d 1138, 1443 (Ill. App. Ct. 1988).[1]

---

[1]  See also  Colgren v. County Line Cartage, Inc., (N.D. Ill. 2000) (dismissing plaintiffs' retaliation allegations premised upon alleged violations of the Illinois Wage Payment and Collection Act where plaintiffs were not discharged -- "[t]he Illinois Supreme Court 'has thus far declined to recognize a cause of action for retaliatory constructive discharge. . . .'"); Taylor v. Gilbert & Bennett, 1996 WL 501576, *6 (N.D. Ill. 1996) (granting employer's motion for summary judgment on plaintiff's retaliatory discharge claim where employee was permanently laid off -- Illinois does not recognize a cause of action for retaliatory constructive

Burrus argues in his Memorandum that he would be "left without a remedy" if the Court were to not recognize his retaliatory constructive discharge cause of action. (Memorandum, pgs. 18, 19)   Burrus fails to mention one critical fact, however --   he voluntarily resigned. Specifically, Burrus testified that on February 12, 2003, he contacted Great Western and informed the Company that he was resigning because he was "stressed out." (Burrus Dep. 145, 146, 148, 149)  On the resignation document, Burrus noted that he resigned for personal reasons; specifically because his subordinate employees had lost their respect for him and because employee morale at the Assumption facility was poor.  (Burrus Dep. 151, 152, 153, 154; Burrus Dep. Ex. 7)  Burrus admits that at no point prior to Burrus' February 13, 2003 resignation did Bob Roese ("Roese"), Burrus' supervisor, threaten to discharge Burrus.   (Burrus Dep. 162) Accordingly, by his own testimony, Burrus is properly "left without a remedy" in this case because Great Western did not tortiously harm him, it simply accepted his voluntary resignation.

Under long-settled Illinois law, Burrus cannot maintain a claim for retaliatory constructive discharge.  As there is no genuine issue of material fact, and Burrus' cause of action for retaliatory constructive discharge fails as a matter of law, Great Western's Motion for Summary Judgment should be granted.[2]

---

discharge); Hartlein v. Illinois Power Co., 601 N.E.2d 720, 730 (Ill. 1992) ("We further decline to expand the tort of retaliatory discharge, on these facts, to encompass the concept of 'constructive discharge.'"); Grey v. First National Bank of Chicago, 523 N.E. 2d 1138, (Ill. App. Ct. 1988) (dismissing plaintiff's claim for retaliatory constructive discharge where employee resigned).

[2] Burrus cites Hinthorn v. Roland's of Bloomington, Inc., 503 N.E.2d 1128 (App. Ct. Ill. 1987), as supporting his claim that the Court should disregard longstanding precedent and recognize a cause of action for retaliatory constructive discharge.  In Hinthorn, the court refused to recognize the retaliatory constructive discharge cause of action.  Rather, the court held that where an employee is forced to resign under the employer's threat of discharge, such termination constitutes a discharge within the retaliatory discharge concept.  Id.  Here, Burrus admits that at no point prior to his February 13, 2003 resignation did Roese, Burrus' supervisor, threaten to discharge him.  (Burrus Dep. 162)  Moreover, rather than trying force

**B.    Burrus Has Not Alleged Facts Sufficient To Create A Claim For Constructive Discharge**

Putting aside the fact that Great Western's Motion for Summary Judgment should be granted because Burrus' Complaint is premised upon a cause of action that is not recognized under Illinois law, even if the Court were to expand the tort of retaliatory discharge to encompass constructive discharge, Burrus cannot point to any facts that would establish such a claim.

**1.    *Henn* And *Chicago Hospitals* Do Not Support Burrus' Claim That He Was Constructively Discharged**

In his Memorandum, Burrus cites Henn v. Nat'l Geographic Society, 819 F.2d 824 (7th Cir. 1987), and Equal Employment Opportunity Comm'n v. Univ. of Chicago Hosp., 276 F.3d 326 (7th Cir. 2002), as supporting his contention that he has provided facts sufficient to demonstrate a constructive discharge claim.  However, Henn actually stands for the proposition that Burrus' allegations are insufficient in this regard, and Chicago Hospital is inapposite.

In Henn, the plaintiffs, who were advertising salespeople, claimed that they were constructively discharged in violation of the Age Discrimination in Employment Act ("ADEA") because their former employer "made their lives miserable" by giving them "the silent treatment" and by giving them "threats (real and implied) of unpleasant consequences if they did not start selling more ads."  In finding that the plaintiffs did not establish a constructive discharge claim, the court held that "any threats made to these plaintiffs while they were considering [a severance offer] were no greater than justified by their lack of sales.  Selling is a risky profession, and it does not make a salesman's job unbearable to remind him that he must produce and that there are

---

Burrus to quit, Great Western tried on two occasions to assist Burrus in his ongoing difficulties with workplace stress by permitting him to leave the Assumption facility.  (Burrus Dep. 19, 20, 21, 126, 127)  In fact, members of Great Western management even requested that Burrus not quit his employment.  (Burrus Dep. 19, 20, 21, 126, 127)  Accordingly, the court's decision in Hinthorn fails to support Burrus' claim.

penalties for failure."  Id. at 830.  In finding that the plaintiffs' could not establish a claim for constructive discharge, the court went on to hold that:

> salesmen must endure adverse reactions and other signs of displeasure when their productivity falls off.  An employer's communication of the risks of the job does not spoil the employee's decision to avoid those risks by quitting.  Were it otherwise, any employee about whom there was dissatisfaction would have a jury case under the ADEA, even if the dissatisfaction were supported by objective indicators (such as low productivity).

Id.

Henn does not stand for the proposition advanced by Burrus that "[a] person who is told repeatedly that he is not wanted, has no future, and can't count on ever getting a raise would not be acting unreasonably if he decided to remain with his employer would necessarily be inconsistent with even a minimal sense of self respect, and therefore intolerable." (Memorandum, pg. 20)  To the contrary, Henn establishes that an individual does not present a cognizable constructive discharge claim when the foundation for such a claim is his fear that he will be fired for poor work performance.  This is exactly what Burrus is claiming in this action. Great Western's Motion for Summary Judgment should be granted.

Similarly, Equal Employment Opportunity Commission v. Univ. of Chicago Hosp., 276 F.3d 326 (7th Cir. 2002), does not advance Burrus' claims.  In Chicago Hospitals, the Equal Employment Opportunity Commission ("EEOC") claimed that a former employee of the employer was constructively discharged when:

> (1) the employee's belonging were packed and her office was being used for storage;
>
> (2) the employer asked one of her supervisors, from whom the employee received good evaluations, to resign and discharged another supervisor because he refused to fire the employee;
>
> (3) there were significant changes in the employee's job evaluations, repeated accusations of failure to follow directions

"and a general environment in which [the employer] was hostile to [the employee's] religious beliefs;" and

(4) the employee was told that her failure to perform a workplace task was the "last straw."

The court found that the aforementioned environment made it "reasonably clear" to the employee that she had "reached the end of the line and that this environment could have "been to a reasonable employee unbearable." Id. Nothing akin to what occurred in Chicago Hospitals transpired in this case.

Here, rather than trying force Burrus to quit, Great Western tried on two occasions to assist Burrus in his ongoing difficulties with workplace stress by permitting him to leave the Assumption facility. (Burrus Dep. 19, 20, 21, 126, 127) In fact, members of Great Western management even requested that Burrus not quit his employment. (Burrus Dep. 19, 20, 21, 126, 127) Moreover, Burrus admits that at no point prior to his February 13, 2003 resignation did Roese, Burrus' supervisor, threaten to discharge him. (Burrus Dep. 162)

Consequently, Chicago Hospitals is inapposite and does not support Burrus' claim that he was constructively discharged. Burrus' constructive discharge claim has no legal support.

## 2.    Burrus' Workplace Difficulties Do Not Create A Claim For Constructive Discharge

Burrus contends in his Memorandum that Great Western constructively discharged him because:

(1) he was threatened with discharge for not respecting the Company's chain-of-command in reporting workplace issues;

(2) Great Western management "implied" that he would be discharged for his inability to raise the morale of his subordinate employees;

(3) Great Western management informed him that he had customer complaints lodged against him;

(4)  the Assumption Plant Manager spoke to Assumption workers outside of Burrus' presence;

(5)  Great Western reassigned job duties that were formerly performed by Burrus;

(6)  Great Western "tried to make [Burrus] look bad in front of [his] staff and [tried] to make it more difficult for [Burrus] to do his job;"

(7)  Great Western "denied" Burrus a pay raise he subjectively believed he should have received and

(8)  Great Western led Burrus' "subordinates to believe that [Burrus'] job was being given to [another employee]."

(Memorandum, pgs. 21, 22)  Based on these purported facts, Burrus makes the conclusory argument that he was "told repeatedly that he was not wanted, had no future with [Great Western], couldn't count on ever getting another raise and would most likely be fired" and thus that he has stated a claim for constructive discharge.  (Memorandum, pg. 22)  However, the record evidence does not support such a conclusory contention.  The manifest weight of legal authority holds that the purported facts actually cited by Burrus (items 1 through 8 above) are insufficient to create an actionable constructive discharge claim.   Burrus' attempt to recharacterize the facts to make them more severe lacks any factual or legal authority.

As discussed in Great Western's Motion for Summary Judgment, in order to establish constructive discharge (for those causes of action that recognize constructive discharge -- none of which apply here), a plaintiff must show that "the employer deliberately or intentionally made the employee's working conditions so intolerable that a reasonable person would have felt compelled to resign to escape the intolerable conditions." Propst v. Bitzer, 39 F.3d 148, 154 n. 5 (7th Cir. 1994); Dudycz v. City of Chicago, 563 N.E.2d 1122, 1126 (Ill. App. Ct. 1990). However, "[i]n the course of most, if not all, people's employment, a wide variety of disappointments, and possible some injustices, occur.  Most of these are normal incidents of

employment that would not lead a reasonable person to quit." <u>Motley v. Illinois Human Rights</u>

<u>Commission</u>, 636 N.E.2d 100, 104 (Ill. App. Ct. 1994). As discussed by the court in <u>Motley</u>:

> reasonable people endure disappointments such as stares, criticism
> of performance, and now and then an unfortunate statement . . . .
> None of these disappointments, either separately or combined,
> create working conditions so intolerable as to force a reasonable
> person to quit . . .. [E]ven if a supervisor were considered a heavy-
> handed manager who dealt poorly with subordinates, that kind of
> manager is, unfortunately, not a rare breed, and simple
> mismanagement does not constitute constructive discharge.

<u>Id</u>. (*discussing* <u>Phaup v. Pepsi Cola Gen. Bottlers, Inc.</u>, 761 F.Supp. 555 (N.D. Ill. 1991)).

Consequently, "[a]n employee may not be unreasonably sensitive to his or her working

environment." <u>Id</u>. Thus, "[c]onditions that are merely unpleasant will not allow an employee to

quit and then claim that, in essence, the employer forced that action." <u>Shelvy v. Potter</u>, 2002 WL

1888442, * 2 (N.D. Ill. 2002).

Here, the foundation for Burrus' constructive discharge claim revolves around the

unhappiness he felt at being unable to satisfactorily perform his job and the stress he encountered

knowing that he was not meeting Great Western's performance expectations. These facts fall

woefully short of establishing a constructive discharge claim. *See* <u>Dudycz v. City of Chicago</u>,

563 N.E.2d 1122, 1127 (Ill. App. Ct. 1990) (no constructive discharge claim where the plaintiff

made a "reasoned decision" to relinquish his position after "weighing all options"); <u>Motley v.</u>

<u>Illinois Human Rights Commission</u>, 636 N.E.2d 100, 105 (Ill. App. Ct. 1994) (constructive

discharge claim failed where a supervisor made an inappropriate comment to the plaintiff and

gave the plaintiff an unfavorable evaluation); <u>Shelvy v. Potter</u>, 2002 WL 1888442, *1-2

(N.D. Ill. 2002) (no constructive discharge claim where the plaintiff was unhappy with her job

duties); <u>Harriston v. Chicago Tribune Co.</u>, 992 F.2d 697, 705 (7th Cir. 1993) (constructive

discharge claim failed where the plaintiff was excluded from office activities, was reprimanded

for no reason, was given undesirable sales territories, and did not receive adequate workplace support); Collins v. Argonne Nat'l Lab., 757 F.Supp. 934, 937-38 (N.D. Ill. 1991) (the plaintiff failed to establish a cognizable constructive discharge claim where the plaintiff was suspended for violating company policies and received an unsatisfactory performance review); Cuevas v. Monroe Street City Club, Inc., 752  F.Supp. 1405, 1413 (N.D. Ill. 1990) (no constructive discharge claim where the plaintiff's workplace concerns were ignored, his breakfast shifts were reduced, and his supervisor was "hard on him").   There is no genuine issue of material fact relating to the issue of constructive discharge, and Great Western's Motion for Summary Judgment should be granted in its entirety.

**C.**    **Even If Burrus' Alleged Constructive Discharge Could Satisfy The Discharge Element Of The *Prima Facie* Case For A Retaliatory Discharge Cause Of Action, Burrus Cannot Point To Any Facts That He Was Retaliated Against**

**1.**    **Burrus Admits That Great Western Agreed With His Workplace Concerns**

Burrus' retaliation claims are based upon four incidents related to:

(1)    Great Western's fumigation of popcorn shipments;

(2)    Great Western's remediation of loose product container lids;

(3)    Great Western's refusal to re-label mis-marked cheese and;

(4)    the Assumption facility's July of 2002 OSHA inspection.

However, as will be discussed below, and notwithstanding the fact that Burrus' retaliatory discharge claim fails because he was not discharged, Burrus cannot show that he was retaliated against.

Putting aside the fact that Burrus' retaliatory discharge claim fails because he was not discharged, Burrus has not proffered any evidence indicating he was retaliated against.  Rather, Burrus admits that:  (1) Great Western management agreed that the popcorn shipments should be

{S0459820.1  12/22/2004 THW KAV}13

fumigated (Burrus Dep. 49, 61, 63, 64, 70, 71, 72, 204); (2) he does not have any information that Great Western wanted to retaliate against him because of his reaction to the infested corn (Burrus Dep. 211); (3) Great Western agreed that he should check the pepper container lids to make certain that they were affixed properly (Burrus Dep. 74, 75, 76); (4) he does not have any information that Great Western wanted to retaliate against him because of his reaction to the loose pepper container lids (Burrus Dep. 213); (5) he does not have any information that Great Western wanted to discharge him because of his reaction to the mis-marked cheese (Burrus Dep. 213); and (6) Great Western management asked him to take steps to address OSHA's concerns after OSHA's July of 2002 inspection (Burrus Dep. 90, 91).

Accordingly, Burrus admits that he has no facts to show that he was "retaliated against" because of his concerns about mis-labeled cheese, the fumigation of popcorn, loose pepper lids, or the Assumption facility's July of 2002 OSHA inspection.  In fact, <u>Burrus testimony demonstrates that Great Western agreed that many of his concerns should be addressed</u>. Summary Judgment for Great Western is proper.

### 2.    Great Western's Acceptance Of Burrus' Resignation Was Not Proximate To His Complaints

Burrus attempts to bolster his retaliation claim by pointing to the purported proximity between his February 13, 2003 resignation and the above-referenced workplace issues. (Memorandum, pgs. 23-25)[3]  As a matter of law, however, there is no causation between these issues and Great Western's decision in February 2003 to accept this resignation.

---

[3]    Burrus claims in his Memorandum that Great Western took a number of "adverse employment actions" against him in retaliation for his allegedly protected conduct. (Memorandum, pg. 23)  It must be remembered, however, that Burrus' cause of action is for retaliatory constructive discharge and is not under a federal discrimination statute allowing for independent causes of action for discrete adverse employment actions less than discharge. Consequently, the only "adverse employment action," to the extent it can be considered as such, of any relevance to Burrus' Complaint is Great Western's acceptance of his resignation.

Burrus testified that a Great Western inspector first detected "infested" popcorn at the Assumption facility in 2001.  (Burrus Dep. 64, 65)  Burrus testified that he raised concerns about infested popcorn in September 2002 (Burrus Dep. 42, 43, 46)  Burrus also testified that the discussion about the mislabeled cheese occurred in November 2002.  (Burrus Dep. 79-80)  Finally, Burrus testified that the Assumption facility's OSHA inspection occurred in July 2002.  (Burrus Dep. 88, 89)[4]

Great Western accepted Burrus' resignation in February of 2003 -- approximately two years after Burrus testified that Great Western first became aware of "infested popcorn," five months after Burrus raised his concerns about the "infested popcorn" issue, three months after the discussion concerning the mislabeled cheese, and seven months after the Assumption facility's July of 2002 OSHA inspection.  Settled legal authority holds that there is no causal nexus between Great Western's decision to accept Burrus' resignation and these issues.  *See* Filipovic v. K & R Express Sys., Inc., 176 F.3d 390, 399 (7th Cir. 1999) (no casual connection where employee was terminated four months after filing EEOC charges); Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 511 (7th Cir. 1998) (no casual connection where employee was discharged five months after filing EEOC charge); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (no casual link where there was a four-month time lapse between protected conduct and adverse employment action); Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 321 (7th Cir. 1992) (no casual link where there was a six-month time lapse between protected conduct and adverse employment action).  Burrus' retaliation claim fails as a matter of law and Great Western's Motion for Summary Judgment should be granted.

---

[4]   Burrus did not testify as to when he had concerns about Louisiana Foods' inadequate affixation of the jalapeno pepper container lids.

### 3.    Burrus' Alleged Evidence Of Pretext Fails

Burrus claims that Great Western's acceptance of his resignation is pretextual because Great Western is unable to prove that Burrus performed his job poorly. (Memorandum, pgs. 22-25) Burrus' purported evidence in this regard fails.

For example, Burrus claims pretext because Reg Bryant ("Bryant"), who at the time was Burrus' supervisor, informed him that he should have been fired for lodging workplace complaints directly with the President of the Company rather than following Great Western's chain of command. (Memorandum, pg. 24) However, there is no dispute that Burrus was <u>not</u> discharged because of this incident. Bryant's stray comment in this regard does not constitute evidence of pretext.[5]

Burrus also claims that Great Western's acceptance of Burrus' resignation is pretextual because Great Western should not have viewed Burrus unfavorably because of his inability to rotate stock. (Memorandum, pg. 24) Rather, Burrus oddly contends that Bryant should have been "disciplined" for the operational changes he implemented that necessitated that Burrus rotate the Assumption facility's inventory. (Memorandum, pg. 24)

However, Burrus testified that upon becoming Great Western's Operations Manager Bryant "tightened up" the operations of Great Western's Assumption location, and that Bryant implemented operational changes in an attempt to improve Great Western's shipping system. (Burrus Dep. 24, 25, 26, 38) Moreover, Burrus testified that, as the Assumption facility's

---

[5]    It should be noted that Burrus' claim in his Memorandum that Bryant informed him that "he should be immediately fired for informing [the Company President] about the concerns [Burrus] had regarding [Great Western's] handling of weevil infested shipments of popcorn" is inaccurate. Burrus testified that Bryant informed him that he should be fired for going around the chain of command, not for the substance of the complaint. (Burrus Dep. 135, 136) In fact, Burrus testified that Bryant agreed with Burrus that the popcorn shipments in question should be fumigated. (Burrus Dep. 49, 61, 63, 64, 204)

INIMAN2 908837v1

Shipping Manager, he was responsible for completing shipping documents, he was responsible for the accuracy of the products shipped from the Assumption plant, and was responsible for handling any problems associated with the products shipped from the Assumption plant. (Burrus Dep. 14, 28, 29, 39) Consequently, Burrus is contending that Great Western's attempt to improve its business, and hold Burrus accountable in his role as Shipping Manager, was somehow improper. Obviously, the Company's attempts to improve its business, and Burrus' inability and unwillingness to take responsibility for his own workplace inadequacies, are not evidence of pretext.

Burrus next presents the remarkable proposition that as the Shipping Manager he was not responsible for improving the morale of his subordinate employees. Burrus was the individual who directly oversaw and managed the operations of the Assumption warehouse. To suggest that "it was not his job" to improve employees' morale in his department only reinforces Burrus' acknowledged inability to successfully handle the responsibilities required of the Assumption facility Shipping Manager position. (Burrus Dep. 144, 152, 153, 154) Burrus' admitted failure to effectively manage the Assumption warehouse does not constitute evidence of pretext.

Finally, Burrus takes issue with the number of customer complaints lodged against him -- even though he admits that six or seven customers complained about his work. (Burrus Dep. 156, 193-195) Thus, by his own testimony, Burrus was not performing his job adequately. Burrus disagreement about the quantity of customer complaints lodged against him is immaterial -- the fact that such complaints were made at all is what is significant. There is no evidence that Great Western acceptance of Burrus resignation was pretextual.

In his deposition, when asked why he believed Roese "wanted him out of the Company," Burrus candidly responded that Roese "wanted to make a change. . .he thought maybe if he got somebody else in there, that things would be better." (Burrus Dep. 213, 214) Accordingly, even Burrus recognizes that he did not perform satisfactorily as the Assumption plant's Shipping Manager. Burrus cannot point to any evidence that Great Western retaliated against him in accepting his resignation. Entry of Summary Judgment in Great Western's favor is proper.

## IV.    Conclusion

On two different occasions prior to February 2003, Burrus left his position as the Shipping Manager at Great Western's Assumption facility because he found the job to be too stressful. On both occasions, Great Western provided Burrus with time off to help him deal with his work-related stress. In fact, Great Western even asked Burrus not to quit. However, in February 2003, Burrus came to the realization that he no longer wanted work as the Assumption plant's Shipping Manager. Based upon this realization, Burrus voluntarily resigned and, in light of his two prior resignation attempts, Great Western accepted Burrus' resignation.

Unfortunately, and at great expense to Great Western, Burrus has made the ill-advised decision to sue the Company. At its very essence, Burrus' claim is premised on his after-the-fact understanding that he acted rashly in resigning in February 2003 and that the Company should have taken him back for yet a third time. However, employers must be able to count on dedicated and capable employees in order to succeed. Burrus' history of walking out on Great Western, and his myriad of performance difficulties, demonstrated that he possessed no such dedication or competence.

Wisely, Illinois courts, and federal courts applying Illinois law, do not recognize Burrus' retaliatory constructive discharge claim as a cognizable cause of action. As there is no genuine

issue of material fact, Burrus' Complaint fails as a matter of law and Great Western's Motion for

Summary Judgment should be granted.

Respectfully submitted,

GREAT  WESTERN  PRODUCTS  COMPANY,
INC.

By:_____s/ David A. Given_____
            David A. Given
            Stuart R. Buttrick

BAKER & DANIELS
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone No.:  317-237-0300
Facsimile:  317-237-1000

Thomas H. Wilson
SORLING, NORTHRUP, HANNA
CULLEN & COCHRAN, LTD.
Illinois Building, Suite 800
607 East Adams Street
P.O. Box 5131
Springfield, IL 62705
Telephone: 217-544-1144
Facsimile: 217-522-3173

Attorneys for Defendant
Great Western Products Company, Inc.

INIMAN2 908837v1

## <u>CERTIFICATE OF COMPLIANCE WITH</u><br><u>LOCAL RULE 7.1(B)(2) LOCAL RULE 7.1(D)(4)</u>

The aforementioned Reply complies with the type volume limitations described in

Local Rule 7.1(B)(2) and Local Rule 7.1(D)(4).  Specifically, this Reply contains 5,594 words,

as calculated by Microsoft Word.


<u>s/ David A. Given</u>
  David A. Given
Attorney for Great Western Products Company, Inc.

20

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this _____ day of December, 2004, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Bradley B. Wilson
Gates, Wise & Schlosser, P.C.
1231 South Eighth Street
Springfield, IL 62703

s/Thomas H. Wilson

INIMAN2 908837v1